**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

FILE NO:  1: <u>25</u>  CV <u>255</u>

| | | |
|---|---|---|
| VISCOSOFT, INC., | ) | |
|   Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT FOR PATENT** |
| HANGZHOU HELIANG NETWORK | ) | **INFRINGEMENT** |
| TECHNOLOGY CO., LTD., HANGZHOU | ) | **(JURY TRIAL DEMANDED)** |
| SHANGWAI TRADING CO., LTD., | ) | |
| LISHUI XINGQUAN TONGRUI | ) | |
| TRADING CO., LTD., and SHAOXING | ) | |
| SPRING HOME TEXTILE CO., LTD., | ) | |
| | ) | |
|   Defendants, | ) | |

Plaintiff Viscosoft, Inc, by and through the undersigned counsel and pursuant to Rule 3 of the Federal Rules of Civil Procedure, hereby complains of the defendants named above by making the allegations contained herein.

## NATURE OF THE ACTION

1.     This is an action for infringement of United States Design Patent No. D969522S1 ("the Patent-in-Suit") arising under the patent laws of the United States, Title 35, United States Code, §§ 100 et seq. This action relates to the design patent of mattress toppers owned by Viscosoft and its infringement by the Defendants.

## PARTIES

2.     Plaintiff Viscosoft, Inc. ("Plaintiff") whose former corporate name was Skytex, Inc., is a corporation organized and existing under the laws of the State of

North Carolina, having a principal place of business in Charlotte, North Carolina. Plaintiff is a sleep company founded in 2010 engaged in the development, manufacturing, and distribution of bedding products principally mattress toppers, mattresses, and other accessories. Viscosoft commercializes its products through both online and brick and mortar retail channels under various brand names such as Viscosoft, Muse Sleep, and other sub-brands.

### Defendant Valuxe

3.      Defendant HANGZHOU HELIANG NETWORK TECHNOLOGY CO., LTD., doing business in the United States via the internet as Valuxe, (hereinafter "Defendant Valuxe") is a Chinese company organized and existing under the laws of the People's Republic of China, having a principal place of business in Hangzhou City, Zhejiang Province, China. Defendant Valuxe is a foreign entity that has no address, physical presence, or subsidiary entity in the United States of America.

4.      Defendant Valuxe is engaged in business in the United States through the Amazon.com website platform and by which the Defendant Valuxe sells and markets mattress toppers. The Amazon.com seller's address for Defendant Valuxe shows only an address written in Chinese Hanzi.  Attached and incorporated herein as **Exhibit 1** is a copy of the seller information page of Defendant Valuxe from the Amazon.com website.

5.      Upon information and belief, Defendant Valuxe engages in the marketing and selling of mattress toppers solely through e-commerce on Amazon.com or on other websites.  After its mattress toppers clear customs in the United States,

2

Defendant Valuxe's mattress toppers go to an Amazon Warehouse for sale and distribution throughout the United States.

6. Customer payments for mattress toppers are collected through Amazon as part of its Fulfillment by Amazon program ("FBA"). After Amazon deducts its fees for services, all funds collected for sales of mattress toppers are electronically transferred back to Valuxe's financial/bank accounts located in China without Defendant Valuxe earning any taxable income in the United States.

## Defendant Sinweek

7. Defendant HANGZHOU SHANGWAI TRADING CO., LTD., doing business in the United States via the internet as Sinweek or SinweekStore (hereinafter "Defendant Sinweek") is a Chinese company organized and existing under the laws of the People's Republic of China, having a principal place of business in Hangzhou City, Zhejiang Province, China. Defendant Sinweek is a foreign entity that has no address, physical presence, or subsidiary entity in the United States of America.

8. Defendant Sinweek is engaged in business in the United States through the Amazon.com website platform and by which the Defendant Sinweek sells and markets mattress toppers. The Amazon.com seller's address for Defendant Sinweek shows only an address written in Chinese Hanzi. Attached and incorporated herein as **Exhibit 2** is a copy of the seller information page of Defendant Sinweek from the Amazon.com website.

9.     Upon information and belief, Defendant Sinweek engages in the marketing and selling of mattress toppers solely through e-commerce on Amazon.com or on other websites.  After its mattress toppers clear customs in the United States, Defendant Sinweek's mattress toppers go to an Amazon Warehouse for sale and distribution throughout the United States.

10.     Customer payments for mattress toppers are collected through Amazon as part of its Fulfillment by Amazon program ("FBA").  After Amazon deducts its fees for services, all funds collected for sales of mattress toppers are electronically transferred back to Sinweek's financial/bank accounts located in China without Defendant Sinweek earning any taxable income in the United States.

### Defendant Joyride Sleep

11.     Defendant LI SHUI XINGQUAN TONGRUI TRADING CO., LTD., doing business in the United States via the internet as Joyride Sleep, (hereinafter "Joyride Sleep") is a Chinese company organized and existing under the laws of the People's Republic of China, having a principal place of business in Lishui City, Zhejiang Province, China. Defendant Joyride Sleep is a foreign entity that has no address, physical presence, or subsidiary entity in the United States of America.

12.     Defendant Joyride Sleep is engaged in business in the United States through the Amazon.com website platform and by which the Defendant Joyride Sleep sells and markets mattress toppers. The Amazon.com seller's address for Defendant Joyride Sleep shows only an address written in Chinese Hanzi.  Attached and

4

incorporated herein as **Exhibit 3** is a copy of the seller information page of Defendant Joyride Sleep from the Amazon.com website.

13.     Upon information and belief, Defendant Joyride Sleep engages in the marketing and selling of mattress toppers solely through e-commerce on Amazon.com or on other websites.  After its mattress toppers clear customs in the United States, Defendant Joyride Sleep's mattress toppers go to an Amazon Warehouse for sale and distribution throughout the United States.

14.     Customer payments for mattress toppers are collected through Amazon as part of its Fulfillment by Amazon program ("FBA").  After Amazon deducts its fees for services, all funds collected for sales of mattress toppers are electronically transferred back to Defendant Joyride Sleep financial/bank accounts located in China without Defendant Joyride Sleep earning any taxable income in the United States.

### Defendant Chun Yi

15.     Defendant SHAOXING SPRING HOME TEXTILE CO., LTD., doing business in the United States via the internet as Chun Yi or Chun Yi Home Textile, (hereinafter "Chun Yi") is a Chinese company organized and existing under the laws of the People's Republic of China, having a principal place of business in Shaoxing City, Zhejiang Province, China. Defendant Chun Yi is a foreign entity that has no address, physical presence, or subsidiary entity in the United States of America.

16.     Defendant Chun Yi is engaged in business in the United States through the Amazon.com website platform and by which the Defendant Chun Yi sells and markets mattress toppers. The Amazon.com seller's address for Defendant Chun Yi

shows only an address written in Chinese Hanzi. Attached and incorporated herein as **Exhibit 4** is a copy of the seller information page of Defendant Chun Yi from the Amazon.com website.

17. Upon information and belief, Defendant Chun Yi engages in the marketing and selling of mattress toppers solely through e-commerce on Amazon.com or on other websites. After its mattress toppers clear customs in the United States, Defendant Chun Yi's mattress toppers go to an Amazon Warehouse for sale and distribution throughout the United States.

18. Customer payments for mattress toppers are collected through Amazon as part of its Fulfillment by Amazon program ("FBA"). After Amazon deducts its fees for services, all funds collected for sales of mattress toppers are electronically transferred back to Defendant Chun Yi financial/bank accounts located in China without Defendant Chun Yi earning any taxable income in the United States.

<u>**JURISDICTION AND VENUE**</u>

19. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 (federal question) and 1338(a) (patent infringement) and 28 U.S.C. § 1367 (supplemental jurisdiction).

20. This Court has personal jurisdiction over Defendants because, among other things, Defendants have purposely availed themselves of the rights and benefits of the laws of the United States of America and of the State of North Carolina by engaging in systematic and continuous contacts including but not limited to marketing and selling and contracting for delivery of mattress toppers in North

Carolina and throughout the United States such that they should reasonably anticipate being haled into court here.

21.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(c)(3) because the Defendants are all foreign companies, and none of them has a place of business in the United States. (*See,* In re HTC Corp., 889 F.3d 1349 (Fed. Cir. 2018)). Defendants have committed acts of infringement of the Patent-in-Suit in this district by marketing and selling mattress toppers both in North Carolina and throughout the United States.

## FIRST CAUSE OF ACTION
**(Patent Infringement)**

22.     Plaintiff re-alleges and incorporates by reference all allegations previously set out herein.

23.     On November 15, 2022, the U.S. Patent and Trademark Office duly and legally issued the Patent-in-Suit entitled Design Patent for Mattress Topper. A true and correct copy of the Patent-in-Suit is attached as **Exhibit 5**. The Patent-in-Suit claims a design of a mattress topper with various distinct design characteristics, including an anti-slip design on the bottom of the mattress topper cover which includes adjustable straps to secure the mattress topper to the mattress and prevent the product from slipping when the consumer moves on the bed.  The design is depicted in the Patent-in-Suit as follows:





FIG. 6



FIG. 1



FIG. 8



FIG. 7

24.     The Patent-in-Suit carries a presumption of validity under 35 U.S.C. § 282(a) and is enforceable.

25.     Plaintiff is the owner of the entire right, title, and interest in the Patent-in-Suit by Assignment filed on and a true and correct copy of which is attached as **Exhibit 6** and possesses the right to sue for and obtain equitable relief and damages for infringement of the Patent-in-Suit.

## Accused Products of Defendant Valuxe

26.     Defendant Valuxe has willfully infringed and continues to infringe the Patent-in-Suit by selling and offering for sale in the United States, and/or importing into the United States Valuxe mattress toppers for different bed sizes and of differing thicknesses which mattress toppers are identified by product description, ASIN, URL, and retail price in **Exhibit 7** attached hereto and incorporated herein    ("Valuxe Accused Products"), embodying the design of the Patent-in-Suit, without authority or license from Plaintiff.

27.     Additionally, Defendant Valuxe has willfully and knowingly infringed and continues to infringe the Patent-in-Suit by applying the patented design, or a colorable imitation thereof, to an article of manufacture, such as the Valuxe Accused Products, for the purpose of sale and/or by selling, offering, or exposing for sale an article of manufacture, such as the Valuxe Accused Products, to which the design of the Patent-in-Suit or a colorable imitation thereof has been applied. Defendant's actions violate 35 U.S.C. §§ 271(a) and 289.

28.    Valuxe Accused Products comprise the following design as shown in the photos below:




29.    As illustrated below, in the eye of the ordinary observer, familiar with the prior art, giving such attention as a purchaser of the Valuxe Accused Products would usually give, the design of the Patent-in-Suit and the design of the Valuxe Accused Products are substantially the same, such that the ordinary observer would be deceived into believing that the design of the Valuxe Accused Products is the same as the design of the Patent-in-Suit.

**The Design of the Patent-in-Suit:**



**The Design of Valuxe Accused Products:**



**Accused Products of Defendant Sinweek**

30.   Defendant Sinweek has willfully infringed and continues to infringe the Patent-in-Suit by selling and offering for sale in the United States, and/or importing into the United States Sinweek mattress toppers for different bed sizes and of differing thicknesses which mattress toppers are identified by product description, ASIN, URL, and retail price in **Exhibit 8** attached hereto and incorporated herein

("Sinweek Accused Products"), embodying the design of the Patent-in-Suit, without authority or license from Plaintiff.

31.    Additionally, Defendant Sinweek has willfully and knowingly infringed and continues to infringe the Patent-in-Suit by applying the patented design, or a colorable imitation thereof, to an article of manufacture, such as the Sinweek Accused Products, for the purpose of sale and/or by selling, offering, or exposing for sale an article of manufacture, such as the Sinweek Accused Products, to which the design of the Patent-in-Suit or a colorable imitation thereof has been applied. Defendant's actions violate 35 U.S.C. §§ 271(a) and 289.

32.    Sinweek Accused Products comprise the following design as shown in photos below:



33.    As illustrated below, in the eye of the ordinary observer, familiar with the prior art, giving such attention as a purchaser of the Sinweek Accused Products would usually give, the design of the Patent-in-Suit and the design of the Sinweek

Accused Products are substantially the same, such that the ordinary observer would be deceived into believing that the design of the Sinweek Accused Products is the same as the design of the Patent-in-Suit.

**The Design of the Patent-in-Suit:**



FIG. 8

**The Design of Sinweek Accused Products:**





## Accused Products of Defendant Joyride Sleep

34. Defendant Joyride Sleep has willfully infringed and continues to infringe the Patent-in-Suit by selling and offering for sale in the United States, and/or importing into the United States Joyride Sleep mattress toppers for different bed sizes and of differing thicknesses which mattress toppers are identified by product description, ASIN, URL, and retail price in **Exhibit 9** attached hereto and incorporated herein ("Joyride Sleep Accused Products"), embodying the design of the Patent-in-Suit, without authority or license from Plaintiff.

35. Additionally, Defendant Joyride Sleep has willfully and knowingly infringed and continues to infringe the Patent-in-Suit by applying the patented design, or a colorable imitation thereof, to an article of manufacture, such as the Joyride Sleep Accused Products, for the purpose of sale and/or by selling, offering, or exposing for sale an article of manufacture, such as the Joyride Sleep Accused Products, to which the design of the Patent-in-Suit or a colorable imitation thereof has been applied. Defendant's actions violate 35 U.S.C. §§ 271(a) and 289.

36. Joyride Sleep Accused Products comprise the following design as shown in photos below:




37.     As illustrated below, in the eye of the ordinary observer, familiar with the prior art, giving such attention as a purchaser of the Joyride Sleep Accused Products would usually give, the design of the Patent-in-Suit and the design of the Joyride Sleep Accused Products are substantially the same, such that the ordinary observer would be deceived into believing that the design of the Joyride Sleep Accused Products is the same as the design of the Patent-in-Suit.

**The Design of the Patent-in-Suit:**



**The Design of Joyride Sleep Accused Products:**




## Accused Products of Defendant Chun Yi

38.     Defendant has willfully infringed and continues to infringe the Patent-in-Suit by selling and offering for sale in the United States, and/or importing into the United States Chun Yi mattress toppers for different bed sizes and of differing thicknesses which mattress toppers are identified by product description, ASIN, URL, and retail price in **Exhibit 10** attached hereto and incorporated herein   ("Chun Yi Accused Products"), embodying the design of the Patent-in-Suit, without authority or license from Plaintiff.

39.     Additionally, Defendant Chun Yi has willfully and knowingly infringed and continues to infringe the Patent-in-Suit by applying the patented design, or a colorable imitation thereof, to an article of manufacture, such as the Chun Yi Accused Products, for the purpose of sale and/or by selling, offering, or exposing for sale an article of manufacture, such as the Chun Yi Accused Products, to which the design of the Patent-in-Suit or a colorable imitation thereof has been applied. Defendant's actions violate 35 U.S.C. §§ 271(a) and 289.

40.     Chun Yi Accused Products comprise the following design as shown in the photos below:

 

41.     As illustrated below, in the eye of the ordinary observer, familiar with the prior art, giving such attention as a purchaser of the Chun Yi Accused Products would usually give, the design of the Patent-in-Suit and the design of the Chun Yi Accused Products are substantially the same, such that the ordinary observer would be deceived into believing that the design of the Chun Yi Accused Products is the same as the design of the Patent-in-Suit.

**The Design of the Patent-in-Suit:**



FIG. 8

**The Design of Chun Yi Accused Products:**




42.     Plaintiff has complied with the marking and notice requirements of 35 U.S.C. § 287.

43.     Upon information and belief, Defendants have gained profits by virtue of their infringement of the Patent-in-Suit.

44.     Plaintiff has suffered and is continuing to suffer damages as a direct and proximate result of Defendants' infringement of the Patent-in-Suit, and Plaintiff is entitled to compensation and other monetary relief to the fullest extent allowed by law, including attorneys' fees, pursuant to 35 U.S.C. §§ 284 and 285.

45.     Plaintiff has suffered injury, including irreparable injury, as a result of Defendants' infringement of the Patent-in-Suit. Plaintiff is therefore entitled to preliminary and permanent injunctive relief restraining and enjoining Defendants from infringing the Patent-in-Suit.

## SECOND CAUSE OF ACTION

### (Unfair and Deceptive Trade Practices)

46.     Plaintiff re-alleges and incorporates by reference all allegations previously set out herein.

47.     This Court has supplemental jurisdiction over pendent state claims in accordance with 28 U.S.C. § 1367. Plaintiff's claims for violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") arise from a common nucleus of operative facts with the infringement of the Patent-in-Suit.

48.     The wrongful and willful infringement of the Patent-in-Suit by the Defendants is an unfair and deceptive trade practice in violation of the North Carolina UDTPA, N.C.G.S. § 75-1.1 *et seq.*

49.     The marketing and selling of all Accused Products by the Defendants are in commerce.

50.     The unfair and deceptive trade practices of the Defendants have proximately caused actual damages to the Plaintiff in an amount to be determined at trial in accordance with law.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues that are so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1.     A judgment that Defendants have infringed the claimed design of the Patent-in-Suit;

2.     An order preliminarily and permanently restraining and enjoining Defendants, their officers, agents, attorneys and employees, and those acting in privity or concert with Defendants, from further acts of infringing the Patent-in-Suit including, but not limited to, making, importing, promoting, offering, or exposing for sale, or selling the products with designs confusingly similar to the claimed design of the Patent-in-Suit, as explained above, until after the expiration date of the Patent-in-Suit;

3.  A judgment against each Defendant for that Defendant's total profits for any article of manufacture to which the design of the Patent-in-Suit has been applied as a result of each Defendant's infringement of the Patent-in-Suit in an amount to be determined at trial as provided under 35 U.S.C § 289 and for money damages sustained as a result of each Defendant's infringement of the Patent-in-Suit in an amount to be determined at trial as provided under 35 U.S.C. § 284, whichever is greater;

4.  An accounting of each Defendants' profits pursuant to 35 U.S.C. § 289;

5.  A judgment against each Defendant for unfair and deceptive trade practices under North Carolina law and that all money damages be trebled in accordance with N.C.G.S. § 75-16;

6.  Costs and reasonable attorneys' fees relating to this action pursuant to 35 U.S.C. § 285 and N.C.G.S § 75-16.1; and

7.  Such other and further relief as the Court may deem just and proper.

This the 8th day of  August , 2025.

ALLEN STAHL & KILBOURNE, PLLC

*/s/Robert C. Carpenter*
Robert C. Carpenter
N.C. State Bar No. 36672
Robert E. Dungan
N.C. State Bar No. 12743
20 Town Mountain Road, Suite 100
Asheville, NC 28801
828-254-4778 phone
828-254-6646 fax
bcarpenter@asklawnc.com
robertdungan@asklawnc.com
*Attorneys for Plaintiffs*

# VERIFICATION

I, Gabriel K. Dungan, being first fully sworn, deposes and says that I am the President of ViscoSoft, Inc., a North Carolina corporation, Plaintiff in the foregoing action, and that the allegations set forth in the Complaint are true to the best of my knowledge, except for those allegations set forth upon information and belief, and as to those allegations, I believes them to be true.

**VISCOSOFT, INC.,**

a North Carolina corporation

BY: _____

Gabriel K. Dungan, President

STATE OF North Carolina

COUNTY OF Mecklenburg

Sworn to and subscribed before me this the 6th day of August, 2025.

Notary Public Signature: _____

Notary Public Printed Name: Nicholas S. Hamby

My Commission Expires: 12/04/2027